[Civ. No. 6725. Second Appellate District, Division Two.—February 13, 1932.]

JOHN MORAN et al., Appellants, v. JULES RATZKOW-SKI, Respondent.

Mitchel S. Meyberg for Appellants.

Mott, Vallee & Grant and Paul Vallee for Respondent.

THOMPSON (IRA F.), J.—The plaintiffs brought this action against the defendant named in the caption and also Ruben Orschansky, Jane Ratzkowski, Richard Sussman, Jane Sussman and certain other defendants designated by fictitious names. The first count alleged an agreement between the plaintiffs and the defendants whereby the plaintiffs were to receive certain commissions for exhibiting and assisting in the sale of certain merchandise; that plaintiffs fulfilled their part of the contract and there became due and payable to them the sum of $26,085.32 of which only the sum of $11,969.50 had been paid. The second count sought to recover the reasonable compensation for space furnished and services rendered to defendants at their request in the sum of $14,115.82, and the third and last count simply asked recovery of $189.67 laid out and expended by plaintiffs for defendants. During the trial the action was dismissed as against all defendants except Jules Ratzkowski. Judgment was rendered for plaintiffs in the sum of $1,043.59 and the plaintiffs prosecute this appeal therefrom.

Appellants' first contention is that "there is a material prejudicial variance between the pleadings, the findings of fact and the evidence". Counsel then says that the com-

plaint alleges a *written* contract between the parties, which statement we hasten to add is an error as already indicated by our recital of the nature of the complaint, and that the court found a written contract and its performance and then although the answer consists of a denial of all the allegations of the complaint the court went beyond the issues and found two subsequent agreements whereby plaintiffs agreed to accept a commission lower than that named in the written instrument. It is sufficient for the purposes of this opinion to say that the findings are responsive exactly to the theory upon which the case was tried, and in fact to the theory which was advanced by the appellants, and therefore even though the answer insufficiently put in issue the making of the new agreements, the appellants could not now be heard to complain because it is a familiar rule of law that where certain issues of fact are tried in the lower court without objection and as if they were correct, findings responsive thereto will be considered as if upon real issues and if supported by the evidence will stand. (*Illinois T. & S. Bank* v. *Pacific Ry. Co.*, 115 Cal. 285 [47 Pac. 60]; *Sprigg* v. *Barber*, 122 Cal. 573 [55 Pac. 419].) And just to accentuate the position assumed by counsel for appellants during the trial in order to demonstrate the inconsistency of his present contention we extract from his remarks a statement made in response to the suggestion of the court that the oral negotiations previous to the written instrument had been merged therein, which is typical of thirteen or fourteen others made during the progress of the case in the court below. He said: "We have two main causes of action, one is upon a verbal contract made by the parties and the other is under the common count."

In response to a request from the court as to whether it was his contention that the "only contract between the parties at the conclusion" was a parol contract, counsel answered "Yes, . . . We have departed here far from the written contract with—that no contract in writing exists" and he added that it was superseded by an executed oral agreement. ▮ Counsel cannot insist upon a theory in the trial court and then seriously expect us to give earnest consideration to his claim that the court committed error and his adversary was wrong when they acceded to his interpretation of the issues. A foolish "consistency" may be

"the hobgoblin of little minds", but the virtues of inconsistency cannot be availed of here. To attempt an application would rightly bring the administration of justice into disrepute and to a degree justify the ill-founded belief, entertained in some quarters, that the trial of a lawsuit is a game of wits.

Appellants' second contention is to all intents and purposes a restatement of the point already discussed, and the same disposition of it must be made.

We must pass over three other assigned reasons for a reversal of the judgment under a familiar rule of procedure to the effect that we are not required to pass upon suggestions of error unaccompanied by either argument or citation of authority. The remaining points may be grouped, rephrased and stated thus: 1. The evidence is insufficient to support finding No. IV. 2. The court erred in admitting evidence of a conversation between respondent and Mrs. Vivian Tennant wherein the agreements mentioned in finding IV were made. 3. The court failed to find upon a material issue. The finding mentioned which is assailed as being insufficiently supported reads as follows:

"That on the 28th day of February, 1927, plaintiffs and defendant Jules Ratzkowski made and entered into an agreement wherein and whereby defendant Jules Ratzkowski agreed to pay plaintiffs 5% of the amount he would receive should he make an exchange of a portion of said merchandise for certain land in the county of Riverside, California, belonging to one W. J. Hole. That thereafter and on said 28th day of February, 1927, defendant Jules Ratzkowski, agreed with said W. J. Hole to exchange $69,400 of said merchandise for certain land in Riverside County, California. That thereafter said agreement between Jules Ratzkowski and said W. J. Hole was consummated. That plaintiffs and defendant Jules Ratzkowski have performed all of the terms, conditions, and covenants of said agreement of February 28, 1927, on the part of each of them to be performed.

"That on the 3rd day of March, 1927, defendant Jules Ratzkowski informed plaintiffs that he could and would consummate a deal with said W. J. Hole by which he would give said Hole all of said merchandise then remaining at the Hall of Arts Studio for $50,000.00 cash and $50,000.00 in land in Riverside County, California, if plaintiffs would

accept 5% of the cash part of the deal. That thereupon plaintiffs agreed to accept 5% of the cash part of said deal should said deal be made, and defendant Jules Ratzkowski agreed to pay plaintiffs the same. That thereafter and on or about the 3rd day of March, 1927, defendant Jules Ratzkowski exchanged all of said merchandise then remaining in the Hall of Arts Studio with said W. J. Hole for $50,000.00 cash and $50,000.00 in land located in Riverside County, California. That plaintiffs and defendants Jules Ratzkowski have performed each and all of the terms, conditions, and covenants of said agreement of the 3rd or 4th day of March, 1927, on the part of each of them to be performed.

"That it is not true that from said merchandise goods were sold at private sale in the amount of $240,000.00. That it is not true that thereby or otherwise there became due or payable to plaintiffs or either of them the sum of $26,085.32. That it is not true that defendant Jules Ratzkowski has heretofore paid on account only the sum of $11,969.50. That it is not true that there is now due · or payable or owing or unpaid to plaintiffs or either of them from defendant Jules Ratzkowski, the sum of $14,115.82 or any other sum on account of said exhibition and sale, in excess of $873.92.

"That by reason of said agreement dated December 28, 1926, and said agreement made on or about the 28th day of February, 1927, and said agreement made on or about the 3rd day of March, 1927, defendant Jules Ratzkowski became indebted to plaintiffs as follows: 5% of $41,706.50 which is the amount of goods sold at auction, $2,085.32; 10% of $48,751.00 which is the amount of goods sold at private sale, or $4,875.10; 5% of $69,400.00 which is the amount of goods exchanged with W. J. Hole for land in Riverside County, or $3,740.00; 5% of $50,000.00 being 5% of the cash part of the deal made between defendant Jules Ratzkowski and W. J. Hole on or about the 3rd or 4th day of March, 1927, by which said defendant exchanged goods for $50,000.00 cash and $50,000.00 in land, or $2,500.00, and $169.50 expense incurred,' making a total indebtedness by reason of the premises aforesaid of $13,099.92. That there has heretofore been paid on account by defendant Jules Ratzkowski to plaintiffs, the sum of $12,056.50. That by

reason of the premises and of said agreements, there is a balance due, owing and unpaid from defendant Jules Ratzkowski to plaintiffs of $1,043.42.''

The burden of appellants' argument to sustain their position that this finding is without support is that Mrs. Tennant had no authority, actual or ostensible, to enter into the agreement. And in finding a solution to the problem thus presented to us we shall also solve the point designated by us as number two. The written memorandum which has been referred to is in the form of a letter accepted by respondent, upon the letter-head of the ''Hall of Arts Studio'' and carrying at the top, as though to indicate the owners or copartners, the names John Moran, one of the appellants, and Vivian Tennant. It provides in effect that a collection of antiques gathered by respondent should be exhibited commencing January 14, 1927, and continuing until February 1st, in the Hall of Arts Studio; that commencing February 1st and continuing until March 1st, the collection should be on exhibition for the purpose of private sale; that Mr. Moran, Mr. Tennant and Mrs. Tennant should devote their time exclusively to the sale and the Hall of Arts Studio should receive five per cent of all gross auction sales and ten per cent of all gross private sales. The instrument introduced bore the signatures of appellants and respondent, but it should be added that Mr. Ratzkowski testified that the copy which had been given him and which he had entrusted to Mr. Meyberg during a time when he was respondent's attorney was signed by Mrs. Tennant and Phoebe Moran. On February 28, 1927, respondent was approached by one W. J. Hole to exchange $69,400 worth of the collection for land in Riverside County. According to his testimony he refused to make the deal unless the Hall of Arts Studio would accept a five per cent commission. He conferred with Mrs. Tennant and she agreed that they would accept. Subsequently and on March 3d Hole offered to take the remainder of the merchandise and give therefor $50,000 in cash and $50,000 in land in Riverside County. Again the respondent declined until he had the consent of Mrs. Tennant that they would accept a five per cent commission. The dispute really hangs around these transactions with Hole. A letter dated March 16, 1927, signed by both appellants was put in evidence, which seems to put to an

end all controversy concerning the first transaction because it is therein said "In the first sale to Mr. Hole in the amount of $69,400, Mr. Ratzkowski *suggested that we accept* 5% as our commission on this deal and which we are inclined to accept for the reason that *it was represented* that there was no cash transaction being a trade for real estate. However in the second sale to Mr. Hole which amounts to over $100,000 *we had no understanding* with Mr. Ratzkowski other than our contract which calls for 10%." (Italics ours.) Here is an admission of the making of an agreement as to the first deal and corroborates the testimony of the respondent. Standing alone it would be sufficient to support the finding in this particular.

The date of the second transaction, March 3d, after the expiration of the time mentioned in the written instrument may also be important. Undoubtedly the testimony is sufficient to sustain the court's finding providing that Mrs. Tennant was clothed with the actual or ostensible authority to make the agreement. The court found that the partnership consisted of John Moran and L. V. Tennant. However, it will be observed that the testimony was that she signed the copy of the original agreement given to respondent; that her name appeared on the letter-head as though she were one of the proprietors; that she, together with Moran, wrote to Richard Sussman canceling a letter of his concerning an assignment of goods totaling $20,000; that she, during this period, drew all of the checks on the Hall of Arts Studio account; and kept the book accounts; that, in short, according to the testimony of the appellant Moran, "did everything that could be done around there". Also the respondent testified that before the contract was executed Mr. Moran introduced him to Mrs. Tennant with the statement that she was his partner "who is in charge of the whole business" and "is going to make the contract". The foregoing is ample to justify the lower court's implied conclusion either that Mrs. Tennant actually possessed the authority to deal with respondent or that respondent had been led to believe by the actions and statements of appellants that she possessed such authority. It is immaterial which view the court entertained. Either was sufficient to warrant the finding and also to justify the introduction of the evidence which is the next ground of assault upon the judgment.

Lastly, it is said that the court failed to find upon a material issue. But here again counsel's contention cannot be sustained. He says the court failed to find whether a sale of $20,000 was made to a W. L. Arnold. The findings are that sales were made totaling certain amounts. The matter of $20,000 was an item entering into the court's calculations and is fully covered by the findings mentioned.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 12, 1932.